[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 16-12924
Non-Argument Calendar
_____

Agency No. A206-471-762

JUAN MENDEZ-VELASQUEZ,

Petitioner,

versus

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals
_____

(March 27, 2017)

Before HULL, WILSON, and ROSENBAUM, Circuit Judges.

PER CURIAM:

Juan Mendez-Velasquez petitions for review of the Board of Immigration Appeals's ("BIA") final order of removal affirming the Immigration Judge's ("IJ") denial of withholding of removal under Immigration and Nationality Act ("INA") § 241(b)(3), 8 U.S.C. § 1231(b)(3), and of relief under the United Nations Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment ("CAT"), 8 C.F.R. § 208.16(c).  He argues that his testimony before the IJ established both past and probable future persecution.  After careful review, we deny the petition.

## I.

In March 2014, the Department of Homeland Security served Mendez-Velasquez, a native and citizen of Mexico, with a Notice to Appear alleging that he was removable for having entered the United States without authorization.  *See* INA §§ 212(a)(6)(A)(i), (7)(A)(i)(I), 8 U.S.C. §§ 1182(a)(6)(A)(i), (7)(A)(i)(I).  Mendez-Velasquez conceded removability and applied for withholding of removal and CAT relief.

At the merits hearing, Mendez-Velasquez testified that he had been a soldier in the Mexican army for a six-year period before he came to the United States.  One of his duties involved destroying drug plantations.  On one occasion, he was threatened by some individuals that he and his military unit had detained at a drug plantation.  The detainees told him that if they ever saw him again they would

2

harm or kill him.  Mendez-Velasquez did not know the detainees by name, whom they worked for, or what happened to them after they went to trial.  He reported the incident to his commander, but his commander did nothing about it.

Soon after the incident, Mendez-Velasquez left both the army and Mexico because he was afraid of the threats.  He entered the United States in the late 1990s or early 2000s.  He stayed for about a year before returning to his wife and three children in Mexico.  About six months after he returned to Mexico, his wife told him that some unknown individuals who looked like "bad people" had come to their house looking for him.  Thereafter, he moved his family to his wife's parents' place in another area of Mexico.  He then returned to the United States.  About a year later, Mendez-Velasquez arranged to have his wife and three children join him in the United States.

Mendez-Velasquez did not suffer any harm from the drug cartels while he was in Mexico.  Nevertheless, he was afraid of returning because of the threats and the possibility that he might be recognized.

Following Mendez-Velasquez's testimony, his attorney argued that his military service qualified as an immutable and recognized social group for purposes of withholding of removal.  Counsel also argued that the threats against him qualified as past persecution and gave a presumption as to future persecution.

3

The IJ denied his applications for withholding of removal and CAT relief and ordered him removed to Mexico. Finding Mendez-Velasquez's basic story credible, the IJ nonetheless determined that his testimony did not establish a nexus to a statutorily protected ground. Under BIA precedent, the IJ explained, police or security work was not an immutable characteristic or belief so as to qualify as a "particular social group" under the INA. Further, the IJ determined that the nearly twenty-year-old threats from unknown individuals were insufficient to establish either past persecution or torture or a clear probability of future persecution or torture. The IJ also found that Mendez-Velasquez could relocate to a different part of the country to avoid the threat.

Mendez-Velasquez appealed the IJ's decision to the BIA, which affirmed the IJ's decision without an opinion. Mendez-Velasquez now seeks review in this Court.

## II.

When the BIA adopts the IJ's decision without opinion, as in this case, we review the IJ's decision. *Rivera v. U.S. Att'y Gen.*, 487 F.3d 815, 820 (11th Cir. 2007). We review factual findings for substantial evidence and conclusions of law *de novo*. *Id.* Review for substantial evidence is deferential and is based on a construction of the record evidence that is most favorable to the agency's decision. *Id*. We must affirm the agency decision if it is supported by reasonable,

substantial, and probative evidence on the record considered as a whole. *Id.* Findings of fact may be reversed only if the record compels a different result. *Id.*

In order to qualify for withholding of removal under the INA, an applicant must show that his life or freedom would be threatened in the proposed country of removal because of the alien's race, religion, nationality, membership in a particular social group, or political opinion. INA § 241(b)(3)(A), 8 U.S.C. § 1231(b)(3)(A). Evidence that the petitioner has been the victim of private violence or criminal activity does not constitute evidence of persecution on a statutorily protected ground. *Ruiz v. U.S. Att'y Gen.*, 440 F.3d 1247, 1258 (11th Cir. 2006). Additionally, those who engage in risks similar to those of the police or military, regardless of motive, generally do not receive protection as a particular social group under the INA. *Castillo-Arias v. U.S. Att'y Gen.*, 446 F.3d 1190, 1198 (11th Cir. 2006).

An applicant for withholding of removal bears the burden of showing that it is more likely than not he will be persecuted or tortured upon returning to his native country. *Tan v. U.S. Att'y Gen.*, 446 F.3d 1369, 1375 (11th Cir. 2006). Persecution is an extreme concept, requiring more than a few isolated incidents of verbal harassment or intimidation. *Sepulveda v. U.S. Att'y Gen.*, 401 F.3d 1226, 1231 (11th Cir. 2005) ("[T]he menacing telephone calls and threats to [the

petitioner], her brother, and other members of the university group do not rise to the level of past persecution that would compel reversal of the IJ's decision.").

An applicant for withholding of removal may prove persecution in one of two ways. *Seck v. U.S. Att'y Gen.*, 663 F.3d 1356, 1365 (11th Cir. 2011). First, he may establish past persecution based on a protected ground, which creates a rebuttable presumption that his life or freedom would be threatened in the future in that country. *Id.* Alternatively, an applicant who has not suffered past persecution may demonstrate that his life or freedom would be threatened in the future based on a protected ground. *Id.*

An applicant seeking protection under the CAT must establish that it is more likely than not that he will be tortured if removed to the proposed country of removal. *Reyes-Sanchez v. U.S. Att'y Gen.*, 369 F.3d 1239, 1242 (11th Cir. 2004). Additionally, the alien must demonstrate a likelihood that he will be tortured with the acquiescence of the government, meaning that the government was aware of the torture but failed to intervene. *Rodriguez Morales v. U.S. Att'y Gen.*, 488 F.3d 884, 891 (11th Cir. 2007).

Initially, Mendez-Velasquez does not adequately challenge in his initial brief the IJ's determination that he failed to demonstrate a nexus to a cognizable social group. Thus, Mendez-Velasquez abandoned this issue, *see Sepulveda*, 401 F.3d at 1228 n.2 ("When an appellant fails to offer argument on an issue, that issue is

6

abandoned."), which is dispositive of his application for withholding of removal under the INA, *see Seck*, 663 F.3d at 1364–65 (petitioner must show persecution "based on a protected ground").  But even if he did adequately raise the issue on appeal, the IJ correctly determined that evidence of threatened violence by drug cartels on account of Mendez-Velasquez's military service did not constitute evidence of persecution on account of a protected ground.  *See Castillo-Arias*, 446 F.3d at 1198; *Ruiz*, 440 F.3d at 1258.

Assuming *arguendo* that Mendez-Velasquez could establish a nexus to a protected ground, substantial evidence supports the IJ's finding that he did not meet his burden of showing that it was more likely than not he would be persecuted or tortured upon returning to Mexico.  *See Tan*, 446 F.3d at 1375.  With regard to past persecution, Mendez-Velasquez's claim is based on two incidents: (a) while serving in the military, he was threatened by unidentified men who had been detained by his military unit on a drug plantation; (b) about a year later, several unidentified men his wife described as "bad people" came looking for him. These two isolated incidents of intimidation and harassment do not rise to the level of past persecution that would compel a reversal of the IJ's finding.  *See Sepulveda*, 401 F.3d at 1231.

Nor has Mendez-Velasquez shown that the record compels a finding that his life or freedom would be threatened in the future.  *See Seck*, 663 F.3d at 1365.  The

threats occurred nearly twenty years ago, and Mendez-Velasquez does not know what happened to the individuals who threatened him.  Further, Mendez-Velasquez does not challenge the IJ's determination that he could avoid the threat by relocating to another part of Mexico, which defeats a showing of future persecution.  *See Mendoza v. U.S. Att'y Gen.*, 327 F.3d 1283, 1287 (11th Cir. 2003) ("An alien cannot demonstrate that he more-likely-than-not would be persecuted on a protected ground if the IJ finds that the alien could avoid a future threat by relocating to another part of his country.").

Because Mendez-Velasquez has not shown a threat to his life or freedom if he returns to Mexico, substantial evidence also supports the IJ's determination that Mendez-Velasquez did not demonstrate a likelihood that he would be tortured if removed to Mexico.  *See Rodriguez Morales*, 488 F.3d at 891.  Nor is there any indication that he would be tortured with the acquiescence of the Mexican government.  *See id.*

Accordingly, we **DENY** Mendez-Velasquez's petition for review.